### HARGROVE et al. v. CHEROKEE NATION.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1904.)

No. 1,866.

1. JUDGMENT—PERSONS BOUND—PURCHASER PENDING SUIT.

In a suit under section 3 of Act June 28, 1898 (30 Stat. 495, c. 517), which authorizes a suit by a tribe in the Indian Territory to recover lands held by those claiming membership in the tribe, but whose membership or right has been disallowed by the commission or the United States court, and the judgment has become final, the general rule applies that a stranger cannot, by a conveyance or transfer of possession from the defendant pendente lite, acquire any rights which are not subject to the judgment subsequently rendered in the suit, whether or not he is made a party thereto; and where such a purchaser or transferee is brought in by an amended complaint it is not necessary to allege that his membership in the tribe has been disallowed.

2. INDIANS—ACTION TO DISPOSSESS INTRUDER ON LANDS OF TRIBE—NOTICE BEFORE SUIT.

Act June 28, 1898 (30 Stat. 495, c. 517), provides for the bringing of suits by any tribe in the Indian Territory to dispossess intruders on lands of the tribe, and authorizes such suit by any member of the tribe where the chief or governor fails or refuses to bring it. Section 5 requires the party bringing such suit to serve notice on the adverse party to leave the premises at least 30 days before the suit is commenced; and by section 2 it is provided that when, in the progress of any civil suit in a court of the territory, it shall appear that the property of any tribe is affected by the issues, it shall be the duty of the court to make such tribe a party by service on the chief or governor. *Held* that, where a suit to dispossess an intruder was originally brought by a member of a tribe who had served the required notice, such notice was sufficient, although the Cherokee Nation afterward joined, and became the plaintiff in the suit.

3. SAME—DAMAGES FOR DETENTION OF PROPERTY.

Where, in such a suit, it appeared that a defendant brought in by an amended complaint, by an agreement with the original defendants, obtained possession of the premises and improvements after the bringing of the suit, and wrongfully withheld possession from the tribe, a judgment may properly be rendered against him for the damages caused by his wrongful detention, as well as for possession of the property.

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 69 S. W. 823.

An act of Congress approved on June 28, 1898, entitled "An act for the protection of people of the Indian Territory, and for other purposes" (30 Stat. 495, c. 517), contains, among others, the following provisions:

"Sec. 2. That when in the progress of any civil suit, either in law or equity, pending in the United States court in any district in said territory, it shall appear to the court that the property of any tribe is in any way affected by the issues being heard, said court is hereby authorized and required to make said tribe a party to said suit by service upon the chief or governor of the tribe, and the suit shall thereafter be conducted and determined as if said tribe had been an original party to said action.

"Sec. 3. That said courts are hereby given jurisdiction in their respective districts to try cases against those who may claim to hold as members of a tribe and whose membership is denied by the tribe, but who continue to hold said lands and tenements notwithstanding the objection of the tribe; and if it be found upon trial that the same are held unlawfully against the tribe by those claiming to be members thereof, and the membership and right are disallowed by the commission to the Five Tribes, or the United States court, and the judgment has become final, then ·said court shall cause the parties charged with unlawfully holding said possessions to be removed from the same and cause the lands and tenements to be restored to the person or persons or nation or tribe of Indians entitled to the possession of the same: provided always, that any person being a non-citizen in possession of lands, holding the possession thereof under an agreement, lease, or improvement contract with either of said nations or tribes, or any citizen thereof, executed prior to January first, eighteen hundred and ninety-eight, may, as to lands not exceeding in amount one hundred and sixty acres, in defense of any action for the possession of said lands show that he is and has been in peaceable possession of such lands, and that he has, while in such possession made lasting and valuable improvements thereon, and that he has not enjoyed the possession thereof a sufficient length of time to compensate him for such improvements. Thereupon the ·court or jury trying said cause shall determine the fair and reasonable value of such improvements and the fair and reasonable rental value of such lands for the time the same shall have been occupied by such person, and if the improvements exceed in value the amount of rents with which such persons should be charged the court, in its judgment, shall specify such time as will, in the opinion of the court, compensate such person for the balance due, and award him possession for such time unless the amount be paid by claimant within such reasonable time as the court shall specify. If the finding be that the amount of rents exceed the value of the improvements, judgment shall be rendered against the defendant for such· sum, for which execution may issue.

"Sec. 4. That all persons who have heretofore made improvements on land belonging to any one of the said tribes of Indians, claiming rights of citizenship, whose claims have been decided adversely under the Act of Congress approved June tenth, eighteen hundred and ninety-six, shall have possession thereof until ͏and including December thirty-first, eighteen hundred and ninety-eight; and may, prior to that time, sell or dispose of the same to any member of the tribe owning the land who desires to take the same in his allotment: provided, that this section shall not apply to improvements which have been appraised and paid for or payment tendered by the Cherokee Nation under the agreement with the United States approved by Congress March third, eighteen hundred and ninety-three.

"Sec. 5. That before any action by any tribe or person shall be commenced under section three of this act it shall be the duty of the party bringing the same to notify the ͏adverse party to leave the premises for the possession of which the action is about to be brought, which notice shall be served at least thirty days before commencing the action by leaving a written copy wi͏th the defendant, or, if he cannot be found, by leaving the same at his last known place of residence or business with any person occupying the premises over

the age of twelve years, or, if his residence or business address can not be ascertained, by leaving the same with any person over the age of twelve years upon the premises sought to be recovered and described in said notice; and if there be no person with whom said notice can be left, then by posting same on the premises.

"Sec. 6. That the summons shall not issue in such action until the chief or governor of the tribe, or person or persons bringing suit in his own behalf, shall have filed a sworn complaint, on behalf of the tribe or himself, with the court, which shall, as near as practicable, describe the premises so detained, and shall set forth a detention without the consent of the person bringing said suit or the tribe, by one whose membership is denied by it: provided, that if the chief or governor refuse or fail to bring suit in behalf of the tribe then any member of the tribe may make complaint and bring said suit."

Pursuant to the provisions of the foregoing act of Congress, one Claude S. Shelton, who was an Indian, and a member of the Cherokee tribe of Indians, appears to have brought an action against J. S. Hargrove et al., the plaintiffs in error, in which action the Cherokee Nation subsequently joined as a party plaintiff. The original complaint, which was filed by Shelton, is not found in the present record, but the action so brought was tried, resulting in a judgment in favor of the plaintiffs, whereupon the defendants prosecuted an appeal to the United States Court of Appeals in the Indian Territory. The latter court reversed the judgment of the lower court for reasons fully disclosed in its opinion. Vide Hargrove v. Cherokee Nation (Ind. T.) 58 S. W. 667. On the return of the record to the lower court, the defendants filed a motion to dismiss the action, which motion was overruled. The plaintiffs thereupon asked leave to amend the complaint by making one Samuel H. Conklin a party defendant, and leave to that effect was granted. An amended complaint was thereupon filed, and afterwards a second amended complaint, on which the judgment now before this court for review was subsequently rendered. By the second amended complaint Conklin was made a party defendant, and with leave of court Shelton's name was stricken out as a party plaintiff, so that the action was thereafter prosecuted to final judgment by the Cherokee Nation as the sole plaintiff. To this second amended complaint the defendants below, who are the plaintiffs in error here, interposed a demurrer on the following grounds: First, that the court had no jurisdiction of the person of the defendant Conklin, or of the subject of the action as to said defendant Conklin; second, that the plaintiff had no legal capacity to sue the defendant Conklin; third, that there was a defect of parties defendant; and, fourth, that the amended complaint did not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer. The defendants declined to plead further, whereupon a judgment was rendered against them, which was subsequently affirmed on a second appeal to the United States Court of Appeals in the Indian Territory (69 S. W. 823), and the judgment which was so affirmed is before this court for review on a writ of error.

M. M. Edmiston, for plaintiffs in error.

James S. Davenport, for defendant in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

As there was no trial below except on demurrer, and as the record contains no bill of exceptions, the questions for consideration by this court are those which arise on the face of the record, and are in the main those which are presented by the demurrer to the second amended complaint.

The reason assigned in support of the first ground of demurrer, namely, that the court had no jurisdiction of the case as respects the defendant Conklin, and no right to render a judgment against him,

appears to be this: that the amended complaint contains no allegation that Conklin's right to the improvements in controversy had been disallowed by the decision of the commission to the Five Tribes, or a judgment of the United States court in the Indian Territory, which had become final at the time he was made a party defendant. It is urged, in substance, that under the provisions of the third section of the act of Congress above quoted, under which the action is brought, the court before whom the case was tried had no power to cause Conklin to be removed, and the premises in controversy to be restored to the Cherokee Nation, until his membership in the tribe "and right" had been (as the act says) "disallowed by the commission to the Five Tribes or the United States court, and the judgment had become final"; and that, as the complaint showed no such disallowance of his membership and rights by the commission or the United States court, the lower court had no jurisdiction over him in this statutory proceeding. This contention is founded, apparently, upon a misconception of the reasons which caused the Cherokee Nation to make Conklin a party defendant. Its second amended complaint alleged that the defendants other than Conklin were claimants to citizenship in the Cherokee Nation, whose claim had been decided adversely to them by the United States courts and the Dawes commission, and that the judgment had become final; that said defendants were, at the time of the institution of this action, holding the improvements in controversy as claimants to citizenship in the Cherokee Nation; that the defendant Conklin, on or about and since the institution of the suit, had taken possession of the improvements in controversy jointly with the other defendants— that is, with the Hargroves; that he so took possession under an arrangement with the other defendants for the purpose of defeating the Cherokee Nation of its right to the improvements; that at the time of the institution of the present action Conklin had a suit pending against the other defendants to obtain possession of the identical improvements now in controversy; that the Cherokee Nation had filed its interplea in said case for the protection of its rights; and that subsequent to the filing of such interplea Conklin, through his attorney, had dismissed his action to recover the improvements from the other defendants, doing so in pursuance of a combination or agreement with the other defendants for the purpose of holding the improvements in controversy contrary to and against the will of the Cherokee Nation. The complaint contained another allegation to the effect that the defendants were at the time in unlawful possession of the lands and improvements in controversy, that they were not the owners thereof or entitled to the possession, and that the Cherokee Nation was the absolute owner, and as such entitled to the immediate possession of the same.

Fairly construed, these allegations of the complaint must be understood to mean that Conklin acquired such possession as he had subsequent to the commencement of the present action against the other defendants, who were in possession of the improvement in controversy when the suit was instituted, and whose claim and right thereto had been disallowed by the commission, and that such possession as he had gained was obtained by collusion with the other defendants to prevent the Cherokee Nation from recovering the possession of the im-

provement in this action, which was then pending. In view of the foregoing averments, it is manifest, we think, that Conklin was named as a party defendant to the second amended complaint upon the theory that he could not, by collusion with the Hargroves, take possession of the land and improvements in controversy subsequent to the institution of the action, and by so doing defeat the purpose of the suit, although such claim to the improvement as he may have had had not been disallowed by the commission or the United States courts. This view of the case appears to us to be well founded. It is a general rule of law, and one which is absolutely essential to the effective prosecution of an action for the recovery of the possession of real property or to enforce a lien against the same, that one who acquires possession of property from a person against whom a suit is at the time pending for the possession thereof or to enforce a lien against the same takes it subject to the outcome of the pending action, and may be dispossessed precisely as the person from whom he acquired the possession might have been dispossessed had he retained the possession, whether such intruder is made a party to the suit and has his day in court or not. Any other rule would render suits for the recovery of real property ineffectual, as they might be defeated by repeated transfers of possession during the pendency of the action. Tilton et al. v. Cofield, 93 U. S. 163, 168, 23 L. Ed. 858; Whiteside v. Haselton, 110 U. S. 296, 301, 4 Sup. Ct. 1, 28 L. Ed. 152; Burleson v. McDermott, 57 Ark. 229, 21 S. W. 222; Bailey v. Winn, 113 Mo. 155, 165, 20 S. W. 21. See, also, Am. & Eng. Ency. of Law, vol. 21 (2d Ed.), p. 595, and cases there cited. We perceive no reason why this doctrine should not be held applicable to a case like the one at bar, which is an action by the Cherokee Nation to recover an intruder's improvement on land belonging to the nation, although it is a statutory proceeding authorized by an act of Congress. The same reasons exist in such a case as in ordinary cases why an action which is brought by the nation in pursuance of the statute to recover an improvement, provided it is brought against the parties who are in actual possession at the time the suit is instituted, should not be affected, or in any manner interrupted, by a subsequent transfer of the possession to a third party. The facts alleged in the complaint as against Conklin are fully admitted by the demurrer, and inasmuch as it appeared that he acquired possession of the improvement subsequent to the institution of the suit against the Hargroves, he could have been ousted by the nation under a judgment against them, even if he had not been made a party. We are of opinion, therefore, that he has no right to complain because he was made a party and given an opportunity to assert his rights if he had any; and we entertain no doubt of the jurisdiction of the court as respects Conklin, or of its power to enter a judgment against him for the restoration of the land and the improvements thereon to the Cherokee Nation.

The other objections to the amended complaint, which are specified in the demurrer, are that there "is a defect of parties defendant," and that "said amended complaint does not state facts sufficient to constitute a cause of action." The first of these objections only challenges the right of the plaintiff to make Conklin a party defendant, as it saw fit to do. It therefore presents the same question which has

already been considered and decided. As Conklin acquired possession from the other defendants after the suit was brought, we are of opinion that the Cherokee Nation had the right to make him a party defendant if it thought proper to do so, and that he has no cause for complaint on that ground.

The next objection—to the sufficiency of the amended complaint—raises but one question, and that is whether such a notice was given to the defendants as is required by the fifth section of the act of June 28, 1898, supra. The complaint shows that the original defendants were served with the statutory notice by the original plaintiff, C. S. Shelton, but it does not aver that the nation itself served or caused such a notice to be served on the defendants prior to its becoming a party plaintiff; and the question to be determined is whether the notice which was given by Shelton is sufficient to sustain the action. The act of Congress above quoted clearly contemplates that actions for the recovery of intruder's improvements in the Indian Territory shall be brought by the tribe to whom the lands belong, but the proviso to the sixth section of the act declares "that, if the chief or governor refuse or fail to bring suit in behalf of the tribe, then any member of the tribe may make complaint and bring said suit." The fifth section of the act in terms permits the party who institutes the suit, whether it be the tribe or a member of the tribe, to serve the prescribed notice, and the second section of the act makes it the duty of the court, when it appears that the property of the tribe is "in any way affected by the issues being heard" in a suit pending before it, "to make said tribe a party to said suit." It further declares that "the suit shall thereafter be conducted and determined as if said tribe had been an original party to said action." Now, if the original action which was brought by Shelton had come to trial before the Cherokee Nation had elected to join in the proceeding, it would have been the duty of the court before whom the case was tried, under the second section of the act, to have made the nation a party, and in that event it could hardly be claimed that the nation would have been under an obligation to serve a second notice before it could have been made a party and allowed to take part in the prosecution of the suit. Moreover, the notice which the fifth section of the act requires to be served is merely intended to advise the intruder that his claim is contested, and to give him a fair opportunity to abandon his holding before any costs are incurred. One notice to this effect, by a person entitled to give it, is certainly as effective as many. In view of these considerations and the various provisions of the act, we feel constrained to hold that, when a member of a tribe gives the requisite notice to an intruder, and subsequently brings a suit on the strength thereof, and thereafter the nation elects to join in the suit, it may do so without giving another notice in its own behalf; in other words, we are of opinion that it may properly adopt or ratify the action of one of the members of the tribe, who, in bringing a suit to dispossess an intruder in the Indian country, really acts in behalf of his tribe and for its benefit. We conclude, therefore, that the second amended complaint was not fatally defective because it failed to show that a notice had been given by the nation itself, and, as the complaint contains all the other allegations necessary to the establishment

of a cause of action in behalf of the Cherokee Nation, the demurrer to the complaint was properly overruled.

While the point is not argued in the brief of counsel for the plaintiffs in error, yet we have considered the question whether the lower court acted properly in rendering a judgment against the defendant Conklin for the damages occasioned by the unlawful detention of the improvement as well as for the possession of the property. It may be assumed, we think, that this question is fairly raised by the demurrer to the second amended complaint, which challenges the jurisdiction of the court to render a judgment against Conklin of any kind. After due consideration of this question, we have concluded that the judgment against Conklin for damages can be upheld as well as the judgment for possession. It stands admitted by the demurrer to the complaint that he joined with the other defendants in withholding possession of the improvement from the Cherokee Nation, in consequence of which the damages were incurred; and, while the complaint alleges that he entered into possession of the improvement subsequent to the institution of this suit, yet it further avers that his entry was on or about the time the action was commenced, from which we must infer that the wrongful and collusive entry was almost coincident with the institution of the suit. We are aware of no sufficient reason why one who wrongfully intrudes upon the possession of property after a suit to recover it has been brought by the true owner should not be held responsible for the rents and profits of the property from and after the date of his entry. A judgment against such a person for the damages incident to a detention of the property, in which he participated, would seem to be as proper as a judgment against him for the possession. In the present instance the record discloses that the damages which were awarded were assessed by a jury which was called to assess the damages after the demurrer to the amended complaint had been overruled, and, as there is no bill of exceptions bringing the testimony upon the record, we must presume that the assessment rests upon adequate evidence, and is in all respects correct.

Finding no error in the proceedings which, in our judgment, would warrant a reversal of the judgments below, they are each hereby affirmed.