PRICE ET UX VS CHEROKEE NATION ET AL.

Opinion delivered October 19, 1904.

1. *Indian Lands—Ejectment—Complaint—Sufficiency Of.*

Complaint, in an action of ejectment to recover Indian lands held by a Cherokee intruder, alleging the appraisement of the improvements, tender of price, refusal, notice to vacate, and pleading the Indian laws under which such proceedings were had, with allegations of citizenship of plaintiff, *Held,* sufficient as against a demurrer.

2. *Indian Lands—Intruders—Ejectment—Notice—Sufficiency Of:*

In an action of ejectment to recover possession of Indian lands from an intruder a notice given by the original plaintiff is a sufficient compliance with the provisions of Act of Cong. June 28, 1898, c. 517 s. 5 although the Cherokee nation was afterwards made a party and no additional notice was given by it.

3. *Indian Lands—Ejectment—Tender of Value of Improvements—Need not be Kept Good.*

In an action of ejectment to recover possession of Indian lands, where there is a prayer for damages for the wrongful detention, and the tender was properly made, it is not necessary to keep same good by bringing the money into court.

4. *Ejectment—Damages for Detention, Recoverable.*

Under Sec. 2637 Mansf. Dig. (1921 Ind. Ter. Stat.) the plaintiff prevailing in an action of ejectment may recover, as damages, the rents and profits during the detention of the premises.

5. *Indian Lands—Ejectment—Intruder—Jurisdiction of U. S. Courts.*

The United States Courts in Indian Territory have jurisdiction of an action of ejectment brought to recover possession of Indian lands in Cherokee nation held by an intruder.

6. *Indian Lands—Intruders—Ejectment—Limitations.*

Under Act of Cong. June 28, 1898, s. 10, an action to recover possession

of Indan lands begun, and the Cherokee nation made a party all within less than two years from the passage of the act, is not barred by the statute of limitations.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by Robert Tittle against James Price and wife, in which the Cherokee Nation was made a party. Judgment for the Cherokee Nation. Defendants appeal. Affirmed.

*W. S. Stanfield* and *M. M. Edmiston*, for appellants.

*Jos. S. Davenport* and *Will P. Thompson*, for appellees.

RAYMOND, C. J. This is an action of ejectment commenced in the United States Court for the Northern District of the Indian Territory July 6, 1899, when a complaint was filed. There was an amended complaint filed January 2, 1901, which is as follows:

"The plaintiff Robert Tittle, for his minor son, Oatis Tittle, and the Cherokee Nation, after leave of court first had and obtained, file this their amended complaint, and for cause of action against the defendants, James Price and Nancy B. Price, state that the plaintiff Robert Tittle is a citizen of the Cherokee Nation, and that his minor son, Oatis Tittle, is a citizen of said nation by blood, and a resident of the Northern District of the Indian Territory; that the defendants are citizens of the United States, and not citizens of the Cherokee Nation or tribe of Indians and reside and are to be found within the said Northern District, and nearest to Vinita, one of the places of holding United States

Court.   The plaintiffs herein, for their cause of action against the
defendants, claim title to the lands and improvements herein-
after described as follows:

"That the land upon which said improvements are situat-
ed was patented to the Cherokee Nation by the United States of
America on the 31st day of December, 1838.   A copy of said
patent is to be found on pages 416 to 425, inclusive, of the Com-
piled Laws of the Cherokee Nation of 1892.   That said defend-
ants are what are known as intruders, and were holding and
occupying the hereinafter described improvements as such in-
truders at the time this suit was instituted.   That the defendant
James Price claims the hereinafter described improvement as its
owner, and the defendant Nancy B. Price is his wife.   That on
or about the 30th day of September, 1895, the National Council
of the Cherokee Nation passed an act providing for the sale of
intruder improvements, which act was amended on the 21st day
of December, 1895.   A copy of said act and amendment is in
words and figures as follows, to wit:   " 'An act providing for the
sale of improvements left by intruders.

" 'Be it enacted by the National Council:   That the
district sheriffs, wherein said places are located, are authorized to
receive and take possession of on behalf of the Cherokee Nation,
all improvements which have been made or occupied by intruders
upon the Cherokee domain, when such improvements shall be
voluntarily relinquished, or when the United States shall expel
the intruder therefrom, in compliance with stipulation of treaty,
and the district sheriffs are further authorized and directed to
dispose of each of the said improvements for the benefit of the
Cherokee Nation, and that fifty (50) per cent. of the monies
derived therefrom shall be placed to the credit of the general
fund, thirty-five (35) per cent. to the credit of the school fund,
and fifteen (15) per cent. to the credit of the orphan fund, as soon

as practicable after taking possession in conformity with the following regulations:

" 'First. The improvements shall each be sold separately to the highest bidder, after a public notice of the sale for at least thirty days in the Cherokee Advocate and by such other means as the sheriff may find practicable. The notice shall contain a statement in detail of what the improvement consists, its extent, condition and location, and shall precisely specify the day and the time of day, and not earlier than 1 o'clock p. m. the sale will be made, and the particular place in the district.

" 'Second. All bona-fide citizens of the Cherokee Nation shall be equally entitled to bid, provided the citizen so entitled shall own no farm in the Cherokee Nation at the time of the sale, of more than one hundred and sixty (160) acres altogether; and no citizen shall be entitled to purchase more than one improvement, and not to include more than one hundred and sixty (160) and should there remain any surplus of improved land in any case, the sheriff will be authorized to sell the right of occupancy of any such surplus as a separate improvement, or to report such surplus for future disposition, at his discretion, as authorized to be sold under the provisions of this act; and all bidders before being allowed to bid shall make satisfactory showing to the sheriff of the district wherein such improvement is located, of his competency to bid as defined by this act.

" 'Third. Payments shall be made in cash, national warrants or national certificates, and in six equal installments, the first installment to be paid immediately after the award is made. The sheriff making the sale will be required to give the purchaser a receipt for the first installment, and thereafter as they fall due and are paid.

" 'Fourth. A forfeiture of the improvement to the nation, with all previous payments shall follow the non-payment

of any installment when due unless the installment be paid within three months after becoming due.    A like forfeiture shall follow from any transfer of the improvement by the purchaser, under this act, before the last installment is made, and no commutation of payment is permitted.    When any improvement shall become forfeited to the nation, the sheriff shall proceed, without unnecessary delay, to again sell the same under the regulations of this act.

"'Fifth.    The sale of improvement under this act shall convey no right or title in the land, and no rights whatever as regards land except the right of occupancy—such only as would be vested in the purchaser had he made the improvement or bought it from another citizen in exercise of rights belonging to all citizens of the Cherokee Nation under the Cherokee Constitution.

"'Sixth.    Lawfully appointed guardians of orphans shall be allowed to bid on behalf of the orphans under their charge, provided that the orphan has no farm or farms of their own of one hundred and sixty (160) acres at the time of sale.

"'Seventh.    The sheriffs shall sell the improvements in the districts where they are situated respectively, and they are authorized to sell as many improvements on the same day, and to sell at such intervals of days, as in their judgment will best subserve the interests of all concerned.    The said sheriffs shall within ten days after such sales in their respective districts make a complete report of such sales in their respective districts, by whom purchased, and amount paid to the Principal Chief, and turn over to the National Treasurer all proceeds of such sales, after deducting five (5) per centum of all monies collected by him as his fees and all expenses as contemplated by this act.

"'Eighth.    Should any purchaser die before any installment is paid, his heirs or legal representatives shall be vested with

the same right and be required to assume the same liabilities as the deceased purchaser, as regards the improvements purchased and the installments unpaid.

" 'Ninth. In order to give all the citizens competent to buy under this act an equal chance to make their selection from the improvements to be sold, the National Treasurer is directed as soon as his report upon improvements forfeited by intruders is made to the Principal Chief to prepare from such report and from any other available sources, as full a description of all such improvements as practicable, including kind, extent, condition and location; and to have five hundred (500) copies of such description, in both English and Cherokee, printed and distributed throughout the nation for general information. The Principal Chief shall furnish certified copies of all intruder improvements made since August 11th, 1886, to such sheriffs as will come within their districts, from which such sheriff will make his sales as required by this act.

" 'Be it further enacted: That the said sheriffs, before entering upon their duties, and for the faithful performance of same as above imposed, shall file with the Principal Chief an additional bond with sureties satisfactory to the Principal Chief. The bond of the sheriffs of Cooweescoowee, Delaware and Sequoyah districts shall be twenty-five thousand dollars ($25,000) each, and that of the sheriffs of the remaining districts ten thousand each.

" 'Be it further enacted: That after the first installment is paid by any purchaser of such improvements, he shall be placed in possession of such improvement by the sheriff. Should there be found a citizen of the Cherokee Nation in possession of such improvement bought, the sheriff shall, without further proceeding, eject such citizen for this purpose.

" 'Be it further enacted. That it shall be the duty of the Principal Chief to furnish each of the district clerks a list of the names of all persons that have been expelled from this nation as intruders, and no permit shall be issued by any clerk in favor of such persons under penalty of immediate removal of such clerk from office.

" 'Passed in the Senate Sept. 30th, 1895. T. J. Monroe, Pres. of the Senate Pro T. G. W. Wiley, Clerk of the Senate.

" 'Concurred in by the Council, this the 30th day of September, 1895, with the following amendment: In section two, in lines 7 and 8, strike out "one hundred and sixty" and insert in lieu thereof, "one hundred." In section 3, line 3, insert "annual" between "equal" and "installment." In section 6, in lines 6 and 7, strike out "one hundred and sixty" and insert in lieu thereof, "one hundred." Also, be it further enacted: That any person, a citizen of the Cherokee Nation, who by misrepresentation to the sheriff as to the land occupied or enclosed by him or her, shall purchase any improvement sold by the sheriff under the provisions of this act, shall forfeit all installments paid, and the sheriff shall re-sell as other intruder improvements. Bird Jones, Speaker of the Council. J. H. Dick, Clerk of Council.

" 'Amendment concurred in. C. L. Washbourne, President of the Senate Pro Tem. G. W. Wiley, Clerk of the Senate.

" 'Approved October 1st, 1895. C. J. Harris, Principal Chief, C. N.'

" 'An act to amend an act relating to improvements of intruders.

" 'Be it enacted by the National Council:    That the act
of the National Council, approved Sept. 30th, 1895, authorizing
the sale of certain intruder improvements, be, and the same is
hereby so amended that the sheriffs of the several districts are
hereby authorized and required to sell all the improvements of
intruders who have been paid for the same, by the National
Treasurer, by authority of the Cherokee Nation, under the terms,
regulations and conditions specified in said act, to govern the sale
of intruder improvements.    In line seven, after the word
"treasurer" insert the following:    "And who shall have been
tendered pay by the same, together with all other improvements
erected or made on the public domain of the Cherokee Nation by
intruders since August 11, 1886.    Provided, that in case a suit or
suits at law shall become necessary in order to obtain possession
of any improvements so sold, the Principal Chief shall be authoriz-
ed and empowered to employ such legal assistance as he may
deem to be required, at the expense of the Cherokee Nation, and
to make report of his proceedings under this act to the National
Council at its next session."

" 'Passed the Senate Dec. 21st, 1895.    Samuel Smith,
President of the Senate.    Brown Hitchcock, Clerk of the Senate.

" 'Concurred in by the Council Dec. 21st, 1895.    Johnson
Simmons, Speaker of Council.    John R. Leach, Clerk of Council.

" 'Approved Dec. 21st, 1895.    S. H. Mayes, Principal
Chief, C. N.'

" 'An Act to amend an act entitled "An act to amend an
act relating to improvements of intruders," approved Dec.
21st, 1895.

" 'Be it enacted by the National Council:    That the act
entitled "An act to amend an act relating to the improvements of

intruders," approved Dec. 21st, 1895, be so amended as to read as follows: That the act of the National Council approved Oct. 1st, 1895, authorizing the sale of certain intruder improvements, be, and the same is hereby amended that the sheriffs of the several districts are hereby authorized and required to sell all the improvements of intruders in their respective districts, who have been paid by the Treasurer of the Cherokee Nation the appraised value of the same as provided in an act of Congress approved March 3rd, 1893, and who have been tendered payment for the same, together with all other improvements erected on the public domain of the Cherokee Nation by intruders since August 11, 1886, and the intruder by this act authorized to be sold by the said sheriffs, shall be sold upon the same terms and under the same conditions and regulations which are required to govern the sale of intruder improvements in and by the act hereby amended, approved Oct. 1st, 1895. Provided, that in case a suit or suits at law shall become necessary to obtain possession of any improvements so sold the Principal Chief shall be authorized and empowered to employ such legal assistance and contract such other necessary expenses as he may deem to be required at the expense of the Cherokee Nation and to make a report of his proceedings under this act to the National Council at its next session. Provided further that in case suits are instituted in the United States Court for the Indian Territory by the purchasers of that class of improvements held by intruders made prior to August 11, 1886, appraised in accordance with the act of Congress approved March 3, 1893, and the amount for which said improvement was appraised was refected by the intruder in possession thereof, the Treasurer of the Cherokee Nation is authorized and directed in the name of the plaintiff of the suit to tender the amount for which said improvement was appraised into court of which said suit is instituted subject to the action of the court. All laws or parts of laws inconsistent with this act are hereby repealed.

" 'Passed the Senate April 2, 1896. E. L. Cookson, President of the Senate Pro Tem. Richard M. Wolfe, Clerk of Senate.

" 'Concurred in by the Council April 2nd, 1896. John F. Sharpe, Speaker of Council Pro Tem. John R. Leach, Clerk of Council.

" 'Approved April 3rd, 1896. S. H. Mayes, Principal Chief, C. N.

" 'Senate Bill No. 41.

" 'An act to amend an act relating to improvements of intruders.

" 'Be it enacted by the National Council: That an act entitled "An act to amend an act relating to improvements," approved Dec. 21st, 1895, approved April 25th, 1896, be amended by striking out of said act the following language: "Provided, further, that in case suits are instituted in the United States Court for the Indian Territory, by the purchase of that class of improvements held by intruders, made prior to August 11, 1886, approved in accordance with the act of Congress, approved March 3, 1893, and the amounts for which said improvements were appraised were rejected by the intruders in possession thereof; the Treasurer of the Cherokee Nation is authorized and directed to in the name of the plaintiff of the suit to tender the amount for which said improvements was appraised into court of which said suit was instituted subject to the action of said court." Be it further enacted by the National Council, that the Treasurer be and he is hereby authorized and directed to refuse payment to that class of intruders whose improvements were appraised, and who refused the appraised value when tendered by the Treasurer,

as provided in act of the National Council.    Approved Sept. 20, 1895.

" 'Passed the senate December 4, 1896.    Samuel Smith, President of the Senate.    Brown Hitchcock, Asst. Clerk of the Senate.    Johnson Simmons, Speaker of Council.    John R. Leach, Clerk of Council.

" 'Approved December 5th, 1896.    Wash Swimmer, Assistant and Acting Principal Chief, C. N.'

"That the commission heretofore established by the government of the United States to appraise intruder improvements in the Cherokee Nation appraised and declared this to be an intruder improvement, and the Treasurer of the Cherokee Nation made a tender to the said James Price of the amount of the improvement as appraised at by said commission, which amount was refused.    That the said improvements are described as follows:    A certain farm or improvement is situated about 6 miles southeast of Afton, Indian Territory, in Delaware District, Cherokee Nation, consisting of about 150 acres in cultivation and about 50 acres of uncultivated land, together with box house, well, sheds, stables, lots, fences, etc.; said place bounded as follows:    On the north and east by the Buzzard place, and on the south by the public domain, and on the west by the Duncan place.    That said place herein described, although declared to be an intruder improvement, was not sold by the sheriff as provided by act of National Council, but remained in the possession of the defendant herein named.    Plaintiffs aver and allege:    That the defendants unlawfully withhold said place, and they have no right, title, or interest in same, and no right to own, hold, or control same.    That the rental value of said place is $300 per year.    That the said defendants have been declared intruders, and are citizens of the United States, and not entitled to hold or

own lands in the Cherokee Nation. That the plaintiff Oatis Tittle is a citizen by blood of the Cherokee Nation, and, in accordance with the provisions of law regulating the recovery of intruder improvements, defendants have been served with notice to vacate said place more than thirty days prior to the filing of this suit. A copy of said notice is attached, and now on file in this cause and made a part thereof. That the Cherokee Nation is joined in this suit to recover possession of the improvements herein described, and to protect its rights in this cause. That the plaintiff Robert Tittle respectfully states to the court that as the next friend of his minor son, Oatis Tittle, who is a citizen by blood of the Cherokee Nation, he desires to take the land upon which the improvements herein described are located as allotment for his minor son, he not having the amount of land to which he is entitled as his pro rata share of the public domain of the Cherokee Nation, and therefore brings this suit for that purpose. The plaintiff the Cherokee Nation desires to protect all the rights it has in the matter, and recover possession of the improvements on the land herein described which rightfully belong to it, and which are unlawfully and wrongfully withheld by the defendants herein. That the annual rental value of said place is $300 per year, and, as herein set forth, lawful demand has been made for possession of said place, and refused by defendants. That the plaintiffs are the owners of said land, and entitled to the immediate possession thereof, and bring this suit in order to get possession of same. Wherefore plaintiffs ask judgment for possession of the lands and improvements herein described, together with their costs herein expended, and the annual rental value of said place from the date of filing of this suit until its termination."

The notice to vacate the premises in controversy, which is attached to and made a part of the complaint, reads as follows:

"Notice to Vacate.   To James Price and Nancy B. Price, his wife:   You and each of you are hereby notified that the undersigned, Robert W. Tittle, for his minor son, Oatis Tittle, demands that you quit and surrender to him possession of the following described lands together with all improvements thereon, viz.:   A certain farm or improvement about 6 miles southeast of Afton, in Delaware District, Cherokee Nation, Indian Territory, consisting of about 150 acres in cultivation and about fifty acres of uncultivated land, together with box house, well, sheds, stables, lots, fences, etc., said place bounded as follows: On the north and east by the Buzzard place, on the south by the public domain, and on the west by the Duncan place.   That you being a citizen of the United States have no right to own or hold lands in the Cherokee Nation, and the undersigned, a citizen of the Cherokee Nation, desires to take said place as an allotment for his minor son, Oatis Tittle, he therefore demands that you deliver possession of same to him within thirty days from the service of this notice or suit will be instituted to recover same. Dated this 23rd day of May, 1899.   Davenport & Thompson, Attorneys for Robert Tittle and His Minor Son, Oatis Tittle.

"United States of America, Indian Territory, Northern District.   I, F. M. Reed, hereby certify that I served notice to vacate on James Price and Nancy B. Price on the 25th day of May, 1899, by delivering to each of them a true copy of same. F. M. Reed.

"Subscribed and sworn to before me this 26th day of May, 1899.   C.  W.  Livingston,  Notary Public.   My commission expires April 28, 1902."

October 5, 1899, the Cherokee Nation, by order of court, was made party plaintiff, and leave was granted to file an amend-

ed complaint.   The motion of the Cherokee Nation to be made a party is as follows:

"Robert Tittle for His Minor Son, Oatis Tittle, Plaintiff, vs James Price and Nancy B. Price, Defendants.   Application of the Cherokee Nation to be Made Party in This Cause.   Now comes the Cherokee Nation, and respectfully shows to the court that the title to the premises mentioned and described in the complaint in this cause is in the said nation, and that the said James Price and Nancy B. Price, defendants, are unlawfully holding possession thereof against the said nation after lawful demand made by said nation upon the said defendants for the delivery up to the said nation of the possession thereof.   Said nation further represents and shows to the court here that it is informed, and believes said information to be true, that this action is collusive action, not brought in good faith, by reason of the fact that there has been an agreement entered into between the said Robert Tittle, who sues in this act for his minor son, and the said defendants, that upon the calling of this action the said defendants should make default, allowing a judgment for possession to be taken in favor of the said Robert Tittle for his minor son, and that, after said judgment was obtained, the said James Price and Nancy B. Price were to continue to hold and occupy the possession of the said premises until such a time until the said minor should become of full age.   It further represents and shows to the court here that on June 23, 1899, one Lewis Paden, a citizen of the Cherokee nation or tribe of Indians, instituted a suit in this court, which is now pending and numbered 1,035 upon the docket of this court at its present term, against these same defendants, to recover the same premises mentioned and set out in the  complaint in  this action, and the Cherokee  Nation has made itself a party jointly with the said Paden, and consented to the prosecution of his said action, and a recovery of a judgment therein against these defendants to dispossess them of the

premises, and to place said Paden in possession thereof. Wherefore the said Cherokee Nation asks that it be made a party, either plaintiff or defendant, as the court may determine, in this action, and be permitted to plead herein. Hutchings & West, Attorney for Cherokee Nation.

"And the said application is indorsed as follows:

"No. 1,040. Law. In the United States Court in the Indian Territory, Northern District, at Vinita. Robert Tittle, for his minor son, Oatis Tittle, Plaintiff, vs James Price and Nancy Price, Defts. Application of the Cherokee Nation to be Made a Party. Filed in open court October 5th, 1899."

On January 22, 1901, the defendants interposed the following demurrer to the complaint: "Come now the defendants Nancy and James Price, and demur to the amended complaint filed herein: (1) Because the facts alleged do not constitute a cause of action. (2) Because the complaint does not allege that the Cherokee Nation ever served the defendants with notice as required by law prior to the institution of the suit. (3) Because the complaint does not allege that the defendants were paid for their improvements, or that the tender therefor has been kept good, nor facts from which it can be gathered that the same has been kept good. (4) Defendants demur to that portion of the complaint of plaintiff in which plaintiff claims damages for the detention of the premises. (5) Defendants demur to the complaint herein as it now stands, with the intervener only party plaintiff, for the reason that it was not made a party plaintiff within the time allowed by law for it to sue in such cases, and did not apply to be made party plaintiff until after the time expired. (6) That the court has no jurisdiction of the case as made by the amended complaint." This demurrer the court overruled, exception was saved, and, defendants declining to further plead, judgment was rendered in favor of the Cherokee

Nation for possession. The appeal brings here for review the action of the court below in declining to sustain the demurrer.

There is but one specification of error, and that is that the court erred in overruling the demurrer to the complaint. Looking at the complaint, we are constrained to hold that it does allege sufficient facts to constitute a cause of action, and consequently the first cause for demurrer is not well taken.

As to the second cause of demurrer—that the complaint does not allege that the Cherokee Nation ever served the defendants with notice to vacate the premises, as required by law, prior to the institution of the suit, the authorities are against the position taken by appellants. Section 5 of the act of Congress of June 28, 1898, c. 517, 30 Stat. 496, reads: "That before any action by any tribe or person shall be commenced under section three of this act it shall be the duty of the party bringing the same to notify the adverse party to leave the premises for the possession of which the action is about to be brought, which notice shall be served at least thirty days before the commencing of this action by leaving a written copy with the defendant, or, if he cannot be found, by leaving the same at his last known place of residence or business with any person occupying the the premises over the age of twelve years, or, if his residence or business address cannot be ascertained, by leaving the same with any person over the age of twelve years upon the premises sought to be recovered and described in said notice; and if there be no person with whom said notice can be left, then by posting same on the premises." In this case the notice required was served on defendants May 25, 1899, by Robert Tittle, who brought the suit on July 6, 1899. It will be seen that defendants had 42 days' notice of the institution of the suit. The position is taken, however, that this notice is not sufficient; that by the amended complaint the Cherokee Nation becomes a party

plaintiff, and there is no averment that it has served any notice upon defendants to vacate, as required by section 5 of the act referred to. This same point was pressed in the United States Circuit Court of Appeals for the Eighth Circuit in a similar case, and a ruling adverse to the position of appellants was there made. "The next objection—to the sufficiency of the amended complaint—raises but one question, and that is whether such a notice was given to the defendants as is required by the fifth section of the act of June 28, 1898, supra. The complaint shows that the original defendants were served with the statutory notice by the original plaintiff, C. S. Shelton, but it does not aver that the nation itself served or caused such a notice to be served on the defendants prior to its becoming a party plaintiff, and the question to be determined is whether the notice which was given by Shelton is sufficient to sustain the action. The act of Congress above quoted clearly contemplates that actions for the recovery of intruders' improvements in the Indian Territory shall be brought by the tribe to whom the lands belong, but the proviso to the sixth section of the act declares 'that, if the Chief or Governor refuse or fail to bring suit in behalf of the tribe, then any member of the tribe may make complaint and bring said suit.' The fifth section of the act in terms permits the party who institutes the suit, whether it be the tribe or a member of the tribe, to serve the prescribed notice; and the second section of the act makes it the duty of the court, when it appears that the property of the tribe is 'in any way affected by the issues being heard' in a suit pending before it, 'to make said tribe a party to said suit.' It further declares that 'the suit shall thereafter be conducted and determined as if said tribe had been an original party to said action.' Now, if the original action which was brought by Shelton had come to trial before the Cherokee Nation had elected to join in the proceeding, it would have been the duty of the court before whom the case was tried, under the second section of the act, to have made the nation a party, and

in that event it could hardly be claimed that the nation would have been under an obligation to serve a second notice before it could have been made a party and allowed to take part in the prosecution of the suit.    Moreover, the notice which the fifth section of the act requires to be served is merely intended to advise the intruder that his claim is contested, and to give him a fair opportunity to abandon his holding before any costs are incurred.    One notice to this effect, by a person entitled to give it, is certainly as effective as many.    In view of these considerations and the various provisions of the act, we feel constrained to hold that, when a member of a tribe gives the requisite notice to an intruder, and subsequently brings a suit on the strength thereof, and thereafter the nation elects to join in the suit, it may do so without giving another notice in its own behalf.    In other words, we are of opinion that it may properly adopt or ratify the action of one of the members of the tribe, who, in bringing a suit to dispossess an intruder in the Indian country, really acts in behalf of his tribe and for its benefit.    We conclude, therefore, that the second amended complaint was not fatally defective because it failed to show that a notice had been given by the nation itself."    Hargrove vs Cherokee Nation (C. C. A.) 129 Fed. 186.

The third point of demurrer is that the complaint does not allege that the defendants were paid for their improvements, or that the tender therefor has been kept good.    We are inclined to hold that, where there was a prayer as here for damages for the wrongful detention of the premises in the sum of $300 per year, it was not necessary to aver that the money tendered is now here brought into court.    "Where a tender is made for the purpose of discharging goods from a lien, and it is refused, it is not necessary, in an action to recover the possession of the goods, to bring the amount tendered into court.    If an administrator has tendered to an heir or devisee the amount coming to him, or to a

creditor of an estate the whole sum due, or a dividend decreed to be paid, he has performed his duty, and an action on the probate bond cannot be maintained, even though the administrator neglects to bring the sum thus tendered into court. It is sufficient to show that there was not any forfeiture of the bond when the action was brought. If a sum is tendered, which, in an action by the tenderer upon the obligation, is a proper set-off, it is not necessary to bring the money tendered into court. Thus where, after a tender of the premium due upon a life insurance policy, an action is brought to recover upon the policy, the amount of the premium theretofore tendered need not be brought into court, but may be deducted from the sum recovered." Hunt on Tender, § 480, p. 544.

The fourth cause of demurrer—that there could be no recovery for damages for the detention of premises—is not well taken. "If the plaintiff prevail in the action, he shall recover by way of damages the rents and profits down to the time of assessing the same." Mansf. Dig. § 2637 (Ind. Ter. St. 1899, § 1921). In order to recover damages, the prayer was necessary.

The fifth cause of demurrer—that the court has no jurisdiction—is likewise untenable.. The United States Circuit Court of Appeals for the Eighth Circuit has held to the contrary, Hargrove vs Cherokee Nation, supra.

Counsel for appellants, in their brief, further contend that the Cherokee Nation was barred by limitation from recovery in the cause. Section 10 of the act of June 28, 1898, reads: "That all actions for restitution of possession of real property under this act must be commenced by the service of a summons within two years after the passage of this act, where the wrongful detention or possession began prior to the date of its passage; and all actions which shall be commenced hereafter, based upon wrongful de-

tention or possession committed since the passage of this act must be commenced within two years after the cause of action accrued. And nothing in this act shall take away the right to maintain an action for unlawful and forcible entry and detainer given by the act of Congress passed May second, eighteen hundred and ninety (Twenty-sixth United States Statutes, page ninety-five)." Why counsel should press this contention, is not clear. The suit was commenced July 6, 1899, a year and eight days after the passage of the act. The application of the Cherokee Nation to be made a party to the suit was filed October 5, 1899, a little over one year and three months from the time the law became effective. The amended complaint was filed January 2, 1901, which was within the time prescribed by the statute. It may be conceded that unless the suit was commenced within two years from the passage of the act of Congress, "where the wrong-ful detention of possession began prior to the date of its passage," the same would be barred; but, under the record here, and authorities cited, there is nothing in the point suggested.

The judgment of the court below is affirmed.

CLAYTON and TOWNSEND, JJ., concur.